IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| BRITT JOY HAWKER and CRAIG DEE HAWKER, as guardians for C.G.H., a minor,<br><br>Plaintiffs,<br><br>vs.<br><br>SANDY CITY CORPORATION and OFFICER TINA MARIA ALBRAND,<br><br>Defendants. | MEMORANDUM DECISION<br>AND ORDER<br><br><br>Case No. 2:12-cv-1 |

This case arises out of an incident that occurred on August 31, 2011, between C.G.H., a fourth grader at Bell View Elementary School, and Defendant Tina Maria Albrand, a School Resource Officer who was employed by the Sandy City Police Department. Plaintiffs Britt Joy and Craig Dee Hawker, who are C.G.H.'s grandparents and guardians, allege that Officer Albrand used excessive force when she arrested C.G.H. after he stole an iPad from the school. The Plaintiffs have asserted additional claims against Sandy City under the theory that the city failed to properly train or supervise Officer Albrand. The Plaintiffs also maintain that Sandy City is liable for C.G.H.'s injuries because it ratified and approved of Officer Albrand's allegedly unlawful actions.

For the reasons stated below, the court finds that Officer Albrand did not commit a constitutional violation. Since the Plaintiffs' other claims all require that a constitutional violation occurred, these remaining causes of action must be dismissed. Accordingly, the court

GRANTS the Defendants' Motion for Summary Judgment.

FACTUAL BACKGROUND

On the morning of August 31, 2011, Bell View Elementary Principal Christine Webb noticed that C.G.H. was carrying what appeared to be a school iPad. She asked him to return it, and he became agitated when she looked to see whether the iPad was school property. C.G.H. grabbed the iPad back from her and ran down the hall. Multiple teachers became involved in the chase and struggle that ensued, in which C.G.H. became aggressive and was eventually put in a Mandt hold.[1] Principal Webb contacted Officer Albrand twice during this encounter. In the first phone call, Principal Webb asked Officer Albrand to help with an incident involving a student who was in possession of school property and was resisting. In the second call, Principal Webb asked her secretary to tell Officer Albrand that the situation had escalated and that Officer Albrand should come right away.

By this time, Ms. Hawker had also come to the school. Principal Webb, Ms. Hawker, and the school psychologist, Rebecca Scharton, were all sitting across the hall from C.G.H. when Officer Albrand arrived, and C.G.H. was no longer being restrained by any teachers. Principal Webb asked Officer Albrand to issue C.G.H. a citation for the theft. The parties dispute the events that occurred next.

Officer Albrand says that she approached C.G.H. and tried to start a conversation with him. (Albrand Dep. 24-25; *see also* Webb Dep. 25, 66; Scharton Dep. 16.) C.G.H. did not look at her or otherwise respond. (Albrand Dep. 25; *see also* Webb Dep. 65-66; Scharton Dep. 100.)

---

[1] In a Mandt hold, the teacher stands behind the student and puts his or her arms around the student's body with the student's arms on top of the teacher's arms. Ms. Hawker gave the school permission to use a Mandt hold on C.G.H. if he became aggressive.

Officer Albrand then asked C.G.H. to stand up, but he did not do so. (Webb Dep. 26, 30, 65; *see also* Albrand Dep. 28-29; Scharton Dep. 15-16.) Ms. Scharton testified that she saw C.G.H. kick his legs out toward Officer Albrand during this conversation. (Scharton Dep. 25.) Officer Albrand then placed her left hand on C.G.H.'s left hand and her right hand on C.G.H.'s left elbow to assist him to stand up. (Albrand Dep. 29.) As soon as Officer Albrand grabbed C.G.H.'s arm, he started twisting and fighting. (*Id.* at 26.) Officer Albrand thought that C.G.H. was grabbing for her duty belt, where she wore her gun, so she got a tighter grip on C.G.H.'s arm using a twist lock technique. (*Id.* at 30.) Officer Allbrand held C.G.H.'s arm at his side with both hands, twisting his arm in a painful way so C.G.H. could not kick or flail around. (*Id.* at 30-31.) Officer Albrand was then able to put handcuffs on C.G.H., at which point he stopped resisting. (Webb Dep. 27.) In total, Officer Albrand fought with C.G.H. for about three to four minutes. (B. Hawker Dep. 103.) Principal Webb and Ms. Hawker then accompanied Officer Albrand and C.G.H. to the school office. (Webb Dep. 26.) Officer Albrand's account of what happened was corroborated by Principal Webb and Ms. Scharton, although Ms. Scharton admitted that her view was blocked because of the way that Officer Albrand and C.G.H. were positioned. (Scharton Dep. 17-18.)

Ms. Hawker disputes this version of events because she claims that Officer Albrand put C.G.H. in a twist lock directly after encountering him. According to Ms. Hawker, when C.G.H. looked at Officer Albrand but did not respond to her questions, Officer Albrand immediately "grabbed his arm, yanked him up off the floor, [and] put him in a twist lock." (B. Hawker Dep. 90, 100.) Ms. Hawker stated that C.G.H. was crying "You're hurting me" when he was placed in the twist lock. (*Id.* at 90.) Ms. Hawker also testified that it was only after Officer Albrand

3

grabbed C.G.H. and "put him against the wall" that C.G.H. attempted to kick at Officer Albrand. (*Id.* at 90, 101.) The Plaintiffs emphasize that the twist lock hold is a type of pain compliance technique designed to inflict pain so that the subject will be distracted from whatever activity he is doing that the officer wishes to stop. (Albrand Dep. 31.) The Plaintiffs also point out that none of the eyewitnesses saw C.G.H. grab for Officer Albrand's gun. (*See, e.g.*, Webb Dep. 63-64.)

Once everyone was in the school office, Officer Albrand asked her supervisor, Sergeant Brenda Sanders, to come to the school. In her deposition, Sergeant Sanders testified that she asked C.G.H. if he had touched Officer Albrand's gun. (Sanders Dep. 7.) According to Sergeant Sanders, C.G.H. responded that he had only touched the handle but not the trigger. (*Id.*) The Plaintiffs point out Sergeant Sanders did not mention this statement in her incident report, and that no other eyewitnesses who were present in the office testified that C.G.H. said anything about the gun.

The extent of C.G.H.'s injuries as a result of the incident are unclear. After Officer Albrand completed C.G.H.'s citation, Ms. Hawker and C.G.H. left the school. Ms. Hawker then took C.G.H. to the Intermountain Health Care Sandy Clinic because he was complaining of shoulder pain. (B. Hawker Dep. 118.) Dr. Melinda Liddle examined him and ordered x-rays after noting that C.G.H. had full range of motion and no other external evidence of injury. (Liddle Dep. 14-15.) The radiologist determined that C.G.H.'s shoulder x-ray was normal, but noted a possible hairline fracture in C.G.H.'s left clavicle. (*Id.* at 13-14.) Dr. Liddle recommended that C.G.H. keep his arm in a sling and that he return to the clinic in a week for a proper diagnosis. (*Id.* at 17, 20.) The Defendants note that Ms. Hawker never brought C.G.H.

back to the hospital for this follow-up visit. (*Id.* at 14.) Ms. Hawker testified that, if C.G.H. uses his arm a lot, "his shoulder still bothers him to this day." (Hawker Dep. 122.) The parties also dispute the extent of any psychological injuries that C.G.H. may have suffered as a result of his encounter with Officer Albrand. The evidence most favorable to the Plaintiffs is the assessment of Dr. Christopher Lang, C.G.H.'s treating psychiatrist, who saw C.G.H. about a month after the incident and stated that C.G.H. was "experiencing high levels of anxiety that is almost moving towards Post-Traumatic Stress Disorder after the incident with the police officer." (Valley Mental Health Records, Ex. 4 to Pls.' Opp. Mem., at 33.)

ANALYSIS

I. **Standard of Review**

The court grants summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court "view[s] the evidence and make[s] all reasonable inferences in the light most favorable to the nonmoving party." *N. Natural Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008).

The Defendants argue that Officer Albrand is entitled to qualified immunity for her actions that occurred at Bell View Elementary School. The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once a defendant raises the defense of qualified immunity, the plaintiff must "come forward with facts or allegations sufficient to show both that the defendant's alleged conduct violated the law and that the law was

clearly established when the alleged violation occurred." *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 645 (10th Cir. 1988). "Only after plaintiff has shown a violation of a clearly established right does the defendant assume the normal burden of a movant for summary judgment of establishing that no material facts remain in dispute that would defeat her or his claim of qualified immunity." *Powell v. Mikulecky*, 891 F.2d 1454, 1457 (10th Cir. 1989). Overall, even though the burden shifts to the non-movant, the court must view the facts in a light most favorable to the non-moving party. *See Lundstrom v. Romero*, 616 F.3d 1108, 1118 (10th Cir. 2010).

## II. Violation of Constitutional Rights

The Hawkers assert that Officer Albrand used excessive force when she pulled C.G.H. off the floor and put him in a twist lock hold before handcuffing him. The Hawkers agree that this allegation must be analyzed under the Fourth Amendment's prohibition on unreasonable seizures. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). To ascertain whether Officer Albrand violated C.G.H.'s Fourth Amendment rights, the court must determine whether Officer Albrand's actions were objectively reasonable in light of the facts and circumstances confronting her, and without regard to her underlying intent or motivation. *See id.* at 397. In its analysis, the court must carefully balance the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396. To balance the government's interest against the nature of the intrusion, the court applies the three factors enunciated by the Supreme Court in *Graham*: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the officer or others; and (3) whether the suspect is actively resisting arrest or fleeing to avoid arrest. *Id.*

6

A.  Analysis of the *Graham* Factors

1.  *Severity of the Crime*

When Officer Albrand arrived at the school, she knew that C.G.H. had been fighting with teachers and causing a school disruption for a period of time that was significant enough to warrant two phone calls. She also knew that Principal Webb wanted to file criminal charges against C.G.H. for stolen property. These crimes are relatively minor offenses, especially given that they were committed by a child. As a result, this factor weighs in favor of the Plaintiffs.

2.  *Whether C.G.H. Posed an Immediate Threat to Officer Albrand or Others*

The Plaintiffs maintain that C.G.H. did not pose a threat to anyone before Officer Albrand used the twist lock technique on him or otherwise handled him aggressively. According to the Plaintiffs, Officer Albrand placed C.G.H. in the twist lock control hold immediately after he refused to comply with her verbal commands. Ms. Hawker testified that after Principal Webb told Officer Albrand that she wanted C.G.H. cited for theft, Officer Albrand told C.G.H., "[W]e can do this the easy way by you talking or me, or we can do this the difficult way or hard way by you not talking to me." Ms. Hawker alleges that Officer Albrand then immediately placed C.G.H. in a twist lock hold, which caused C.G.H. to scream in pain.

But Ms. Hawker also testified that C.G.H. grabbed Officer Albrand's arm after Officer Albrand first grabbed C.G.H.'s arm. (Hawker Dep. 100.) This testimony is inconsistent with Ms. Hawker's assertion that Officer Albrand immediately placed C.G.H. into a twist lock hold. If C.G.H. had been placed in a control hold as soon as Officer Albrand touched him, it would have been difficult for C.G.H. to grab her arm. As Officer Albrand testified, "I had [C.G.H.] by his arm, and it was the beginning of a twist lock, and it was not a control hold at that point,

7

because it allowed him to grab my gun and kick at me." (Albrand Dep. 44.) Officer Albrand also stated that if she had C.G.H. in a full, proper twist lock, he would not have been able to resist and flail about. In addition, both Principal Webb and Ms. Scharton confirmed in their depositions that Officer Albrand's first physical contact with C.G.H. was to help him stand up.

While the court views the facts in the light most favorable to the Plaintiffs on this motion, the Plaintiffs must nevertheless provide evidence "such that a reasonable jury could return a verdict for a non-moving party." *Cooperman v. David*, 214 F.3d 1162, 1164 (10th Cir. 2000). Given the contradictory testimony of every other witness, as well as Ms. Hawker's own vague and inconsistent statements, the court finds that Ms. Hawker's statement that Officer Albrand immediately placed C.G.H. in a twist lock hold is not sufficiently supported to allow a reasonable jury to infer this version of the facts. As a result, there is no genuine dispute that Officer Albrand had a brief physical interaction with C.G.H. before a struggle ensued and Officer Albrand placed C.G.H. in the twist lock hold.

According to Officer Albrand, she felt she needed to apply this pain technique because she was concerned that C.G.H. was trying to grab her gun. The Plaintiffs dispute that C.G.H. ever reached for Officer Albrand's gun, arguing that testimony from Sergeant Sanders about this issue is inconsistent. Sergeant Sanders stated in her deposition that C.G.H. said in the school office that he touched the handle of the gun, but not the trigger. But Sergeant Sanders did not mention this statement in her initial report of the incident. The court is not persuaded that it must disregard Sergeant Sanders's deposition testimony simply because she omitted this information from an earlier report. But even if the court assumes for the purposes of the summary judgment motion that C.G.H. never said anything about the gun, the court still finds that there is no genuine

8

issue of material fact about whether Officer Albrand believed that C.G.H. might grab her gun. All the eyewitnesses to the encounter between C.G.H. and Officer Albrand, including Ms. Hawker, testified that C.G.H. was struggling and grabbing Officer Albrand's arm. A reasonable officer could have believed that someone fighting with her in this manner might grab for her gun. As a result, the court finds that it was objectively reasonable for Officer Albrand to believe that C.G.H. could pose a threat to people in his vicinity. This factor weighs against the Plaintiffs.

3. *Whether C.G.H. Was Actively Resisting Arrest or Fleeing*

For the reasons stated above, there is no genuine dispute that C.G.H. was actively resisting Officer Albrand's attempts to restrain C.G.H. when she applied the twist lock hold technique to him. This factor also weighs against the Plaintiffs.

B. Objective Reasonableness

Applying the *Graham* factors in this case, the court finds that Officer Albrand reasonably thought that C.G.H. was resisting arrest and could pose a threat to Officer Albrand or others. Although C.G.H. was a child who had committed minor offenses, Officer Albrand had a legitimate interest in using some degree of physical coercion to restrain C.G.H. in these circumstances. *See Cortez v. McCauley*, 478 F.3d 1108, 1125 (10th Cir. 2007). Even so, the amount of force that Officer Albrand could permissibly use "is not unlimited," and must still meet the Fourth Amendment's reasonableness standard. *See id.*

The court is persuaded that the amount of force that Officer Albrand used during her encounter with C.G.H. was objectively reasonable. It is undisputed that Officer Albrand first attempted to take control of the situation by verbally asking C.G.H. to stand up and accompany her to the school office. When C.G.H. refused to speak to her, Officer Albrand either helped him

9

to his feet or yanked him off the floor. Even if Ms. Hawker is correct that Officer Albrand aggressively pulled C.G.H. from the floor, this amount of force does not constitute a constitutional violation when an officer is attempting to effect an arrest, even in the regrettable circumstance that the officer is arresting a child. After this initial physical contact, C.G.H. began to struggle. Officer Albrand testified that C.G.H. grabbed for her belt, whereas Ms. Hawker stated that C.G.H. grabbed Officer Albrand's arm. Either way, Officer Albrand could have believed that C.G.H. might be able to grab her gun if C.G.H. was not restrained more effectively. In this situation, it was objectively reasonable for Officer Albrand to place C.G.H. in a twist lock control hold while she put handcuffs on him. While intrusive, Officer Albrand's actions were a reasonable response to C.G.H.'s repeated refusal to comply with her requests.

The Plaintiffs urge the court to note the similarities between Officer Albrand's use of force and the circumstances in two cases in which the Tenth Circuit found a violation of a constitutional right.[2] In *Novitsky v. City of Aurora*, the court determined that a jury could find that the use of a twist lock hold was unreasonable. 491 F.3d 1244, 1254-55 (10th Cir. 2007). But in *Novitsky*, the police officer used the hold on an intoxicated man who was found asleep in the back of a parked vehicle while the officers were performing routine "community caretaking" rounds, despite evidence that Mr. Novitsky was complying with the officer's requests and that his demeanor was "benign." *United States v. Novitsky*, 58 F. App'x 432, 436 (10th Cir. 2003)

---

[2]The Plaintiffs also filed a Notice of Supplemental Authority asking the court to consider an opinion that was recently issued by the United States District Court for the Western District of New York. *Rhodes v. Sanford*, 2013 U.S. Dist. LEXIS 106910 (W.D.N.Y. July 29, 2013). The *Rhodes* case is not binding authority on this court, but in any event, the court notes that a number of factual differences distinguish *Rhodes* from the Plaintiffs' case. For instance, the plaintiff in *Rhodes* suffered extensive injuries, including a broken jaw, a broken tooth, a dislocated thumb, and facial abrasions and contusions. *See id.* at *5.

(unpublished).³ Here, Officer Albrand had been called to the school because C.G.H. was causing a lengthy disturbance, and C.G.H. was resistant to her commands once she arrived at the school. Even in *Novitsky*, the officers were granted qualified immunity because the Tenth Circuit found that there were no cases that would put the officers on notice that their use of a twist lock in these circumstances would be a violation of the Fourth Amendment. *Novitsky*, 491 F.3d at 1257. The court does not need to reach the question of whether the law was clearly established here, because it finds that Officer Albrand did not commit a constitutional violation.

*Morris v. Noe*, 672 F.3d 1185 (10th Cir. 2012), another Tenth Circuit case cited by the Plaintiffs, is similarly inapposite. In *Morris*, the police tackled a man to the ground with such force that he was hospitalized for nearly one month following the incident. *Id.* at 1190. Here, the extent of C.G.H.'s injuries include a possible hairline fracture of his collarbone, some lingering discomfort in his shoulder, and an aversion to police officers that may be a symptom of psychological trauma. The court does not discredit or minimize the severity of any of these injuries. But the consequences of C.G.H.'s encounter with Officer Albrand simply do not rise to level of the injuries in *Morris* or other Tenth Circuit cases. While any injury that occurs during the course of an arrest is unfortunate, especially when that injury occurs to a child, none of C.G.H.'s physical or psychological complaints after the incident cause the court to question its finding that Officer Albrand used a constitutionally appropriate amount of force given the circumstances with which she was confronted.

At the hearing the court held on this motion on August 1, 2013, the Plaintiffs stressed that

---

³This citation comes from an earlier case that involved a criminal prosecution against Mr. Novitsky, who was carrying a handgun at the time of the incident and was subsequently indicted for being a felon in possession of a firearm. Both *Novitsky* cases involve the same set of facts.

even if Officer Albrand's use of the twist lock hold was justified, a reasonable jury could find that her initial physical contact with C.G.H. was a constitutional violation. The court disagrees that there is sufficient evidence to support such a finding. After C.G.H. refused to comply with Officer Albrand's verbal commands, it was reasonable for her to employ a hands-on approach to get C.G.H. off the floor. And at the point when Officer Albrand touched C.G.H., all the eyewitnesses agree that a struggle began. Even Ms. Hawker testified that C.G.H. grabbed Officer Albrand's arm. Given these facts, there is not enough evidence to support a verdict that Officer Albrand's actions were objectively unreasonable. As a result, the court finds that no constitutional violation occurred.

### III. Clearly Established Right

If the undisputed material facts show that there was no violation of a constitutional right, "there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). As a result, the court need not determine whether C.G.H.'s right to be free of a twist lock hold or other aggressive handling in these circumstances was clearly established.

### IV. Municipal Liability

The Plaintiffs assert that Sandy City is liable for Officer Albrand's acts under a number of theories, including the arguments that Sandy City failed to adequately train and supervise its police force, and that it encouraged or condoned the use of excessive force by concluding that Officer Allbrand's actions were lawful. To prevail on any of these theories, a plaintiff must prove: "(1) that a municipal employee committed a constitutional violation; and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Okla. Cnty. Bd. Of Cnty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) (citation omitted).

Because the court finds that Officer Albrand did not commit a constitutional violation, Sandy City cannot be liable to the Plaintiffs under § 1983.

## CONCLUSION

For the reasons stated above, the court finds that Officer Albrand did not commit a violation of the Fourth Amendment. Accordingly, Officer Albrand is entitled to qualified immunity. The court GRANTS the Defendants' Motion for Summary Judgment (Dkt. No. 22) and orders the Clerk of the Court to close the case.

SO ORDERED this 3rd day of September, 2013.

BY THE COURT:

_____
ROBERT J. SHELBY
United States District Judge